261 N.J. Super. 190 (1992)
618 A.2d 377
CAROL KOELBLE, PLAINTIFF-RESPONDENT,
v.
JOHN JOSEPH KOELBLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 1992.
Decided December 28, 1992.
*191 Before Judges MICHELS, BILDER and BAIME.
Postizzi & Sayer, attorneys for appellant (Jeri Sayer, on the brief).
No brief was submitted on behalf of respondent.
The opinion of the court was delivered by BAIME, J.A.D.
At issue in this appeal is whether a noncustodial parent who receives alimony from the custodial parent may be ordered to pay child support. We hold that the child support guidelines may be applied to determine the obligation of the noncustodial parent, but alimony received from the custodial parent may not be considered in determining his or her contribution.
The facts are not in dispute. After 29 years of marriage, the parties were divorced in 1982. Plaintiff was awarded custody of the parties' nine year old daughter, Kristina. A property settlement agreement incorporated into the divorce judgment provided that defendant was to pay weekly child support in the amount of $100. In addition, defendant was to pay alimony in the sum of $150 per week. The agreement provided, however, that after Kristina's emancipation, defendant's alimony obligation *192 was to be reduced by a sum equal to 40% of the amount earned by plaintiff in excess of $10,400 a year.
As Kristina matured, she expressed the desire to move into defendant's home. When she became 18, Kristina graduated from high school and enrolled in college on a full-time basis. The parties mutually agreed that she would reside with defendant. On July 31, 1991, defendant filed a motion in the Family Part, requesting a change in the custody order. Defendant also sought child support and a reduction of his alimony obligation. Plaintiff interposed no objection to the proposed modification of custody, but opposed the remainder of defendant's application. Updated case information statements indicated that plaintiff's gross income exclusive of alimony was $531 per week and that her net available income was $406. Defendant's weekly gross income was $1,407 and his net available income was $733.13.
The Family Part judge granted the change in custody and terminated defendant's child support obligation. However, the judge denied defendant's application for child support and a reduction of alimony. Although the judge's oral opinion is not altogether clear, he apparently considered it inconsistent to direct a noncustodial parent who receives alimony to pay child support. We disagree and reverse.
We see nothing antithetical in requiring a noncustodial parent who receives alimony from the custodial parent to bear her fair share of the parties' obligation to support their child. In reaching this conclusion, we recognize that the termination of a marriage involves an "economic mosaic" comprised of equitable distribution, alimony and child support and that these financial components interface. Sheridan v. Sheridan, 247 N.J. Super. 552, 569, 589 A.2d 1067 (Ch.Div. 1990). Nevertheless, each award has a distinct purpose and is based on different policy considerations. The purpose of alimony is to provide the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage. Innes v. Innes, 117 N.J. 496, *193 503, 569 A.2d 770 (1990); Mahoney v. Mahoney, 91 N.J. 488, 501-02, 453 A.2d 527 (1982); Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980); N.J.S.A. 2A:34-23. The objective of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation. Innes v. Innes, 117 N.J. at 503, 569 A.2d 770; Mahoney v. Mahoney, 91 N.J. at 502, 453 A.2d 527; Khalaf v. Khalaf, 58 N.J. 63, 69, 275 A.2d 132 (1971). The supporting spouse's obligation is set at a level that will maintain that standard. Innes v. Innes, 117 N.J. at 503, 569 A.2d 770. In contrast, children are entitled to have their needs accord with the current standard of living of both parents, which may reflect an increase in parental good fortune. Zazzo v. Zazzo, 245 N.J. Super. 124, 130, 584 A.2d 281 (App.Div. 1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991). In other words, children are entitled to share the benefits accruing to a successful parent. Walton v. Visgil, 248 N.J. Super. 642, 646, 591 A.2d 1018 (App.Div. 1991); Dunne v. Dunne, 209 N.J. Super. 559, 567, 508 A.2d 273 (App.Div. 1986); cf. Weitzman v. Weitzman, 228 N.J. Super. 346, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989). "There is no divorce between parent and child." Zazzo v. Zazzo, 245 N.J. Super. at 130, 584 A.2d 281.
The distinction between alimony and child support is made manifest in our statutes and court rules. The Legislature has dictated that certain factors must be considered in setting support. These factors reinforce the differences between alimony and child support in cases not covered by court rule. N.J.S.A. 2A:34-23 provides:
a. In determining the amount to be paid by parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
(1) Needs of the child;
(2) Standard of living and economic circumstances of each parent;
(3) All sources of income and assets of each parent;
(4) Earning ability of each parent, including educational, background, training, employment skills, work experience, custodial responsibility for children, *194 including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
(5) Need and capacity of the child for education, including higher education;
(6) Age and health of the child and each parent;
(7) Income, assets and earning ability of the child;
(8) Responsibility of the parents for the court-ordered support of others;
(9) Reasonable debts and liabilities of each child and parent; and
(10) Any other factors the court may deem relevant.
These child support factors are to be contrasted to those in N.J.S.A. 2A:34-23b respecting alimony.
Unlike alimony, our Supreme Court has adopted specific guidelines to assist judges in determining a parent's child support obligation. R. 5:6A. These guidelines are to be applied with respect to the initial determination of child support and to motions for modification. Zazzo v. Zazzo, 245 N.J. Super. at 129, 584 A.2d 281; Chobot v. Chobot, 224 N.J. Super. 648, 654, 541 A.2d 251 (App.Div. 1988). The guidelines may be modified or disregarded only where good cause is shown. R. 5:6A.
The critical premise upon which the guidelines are predicated is that "both parents ... have a shared obligation to support their child(ren)." Pressler, Current N.J. Rules, Comment 1 to R. 5:6A (1993). Wholly apart from the guidelines, our courts have held that child support is a continuous duty of both parents. See Grotsky v. Grotsky, 58 N.J. 354, 356, 277 A.2d 535 (1971); Ionno v. Ionno, 148 N.J. Super. 259, 261-62, 372 A.2d 624 (App.Div. 1977); Cohen v. Cohen, 6 N.J. Super. 26, 30, 69 A.2d 752 (App.Div. 1949); Sakovits v. Sakovits, 178 N.J. Super. 623, 627, 429 A.2d 1091 (Ch.Div. 1981); Parivash v. Yousef, 89 N.J. Super. 133, 137, 214 A.2d 314 (Ch.Div. 1965), mod. on other grounds, 94 N.J. Super. 403, 228 A.2d 698 (App.Div. 1967); Pieretti v. Pieretti, 13 N.J. Misc. 98, 104, 176 A. 589 (Ch. 1935); see also N.J.S.A. 9:2-4. This principle has deep roots in our jurisprudence, and has been characterized as one emanating from the "natural law." 1 W. Blackstone, Commentaries 447; see also Grotsky v. Grotsky, 58 N.J. at 356, 277 A.2d 535. The guidelines seek to implement this principle by determining the total amount of the child support obligation *195 and then "divid[ing] this sum proportionately between the parents based upon the contribution to the family income." Appendix IX-A, "Considerations in the Use of Child Support Guidelines." The assumption is that "the custodial parent is spending his or her calculated share directly on the child." Ibid. For the noncustodial parent, "the calculated share establishes the amount of the child support order." Ibid.
The guidelines clearly contemplate that a noncustodial parent who receives alimony may be required to bear his or her fair share of the child support obligation. That this is so is best evidenced by the fact that, while spousal support "from other relationships" is to be included in gross income, Appendix IX-E, "Use of the Child Support Guidelines," B(1)(8), alimony is to be excluded if it is being received from the supporting spouse, id., B(3)(b). The underlying thesis is that the dependent spouse may have sources of income other than alimony derived from the supporting spouse that bear upon his or her ability to contribute to the financial needs of the parties' children. In many cases, this assumption comports with every day realities. Common experience indicates that many divorced people who receive alimony are nevertheless able to work and contribute to their own support.
We recognize that the supporting spouse retains the obligation to maintain the dependent spouse in the same standard of living he or she enjoyed prior to the divorce notwithstanding a change in custody arrangements. However, at least theoretically, the needs of the dependent spouse may be reduced when he or she surrenders custody of the parties' children. It bears repeating that the guidelines assume "the custodial parent is spending his or her calculated share directly on the child." Appendix IX-A, "Considerations in the Use of Child Support Guidelines." When physical custody is transferred to the other spouse, the noncustodial parent's former "in kind" contribution may then be translated into a financial obligation to support the child.
*196 We acknowledge the somewhat abstract nature of our discussion thus far. We recognize that a child's change of residence from a custodial to a noncustodial parent is seldom permanent at the time of its inception, "especially when the change occurs on the initiative of a teenager who believes that he or she will be happier living with the other parent." Ohlhoff v. Ohlhoff, 246 N.J. Super. 1, 7, 586 A.2d 839 (App.Div. 1991). As a general proposition, "some time must elapse before the child can decide whether the new living arrangement really will be more to his or her liking and before the custodial parent can decide whether to accept the change on a permanent basis." Ibid. During this transitional period, different perceptions of the permanency of such new living arrangements may require that the relative financial obligations of the parties not be altered.
We also recognize that the needs of the dependent spouse may not be materially reduced when he or she surrenders custody. Despite the distinction between alimony and support, the practical reality is that often they cannot be isolated. Although a court may order or the parties might agree to allocate separate amounts as alimony for the spouse and support for the children, these allocations "are often arbitrary and may not accurately reflect the actual needs of the individual members of the family." Ibid. For example, there is often some incidental benefit to the custodial parent from the "roof expenses" component of child support. See Zazzo v. Zazzo, 245 N.J. Super. at 131, 584 A.2d 281. Suffice it to say, there may be shared needs between the parent and child that are not decreased when custody is surrendered. The "in kind" contribution to which we referred previously may not be directly transmogrified into a reduction in the financial needs of the dependent spouse. Consequently, even if a child's move into the home of the supporting spouse has sufficient permanency to warrant a complete termination of support for that child, it may be inappropriate to require the dependent spouse to pay child support.
*197 We noted previously that the child support guidelines may be disregarded or modified for good cause. R. 5:6A; Appendix IX-A, "Considerations In the Use of Child Support Guidelines." This standard is sufficiently flexible to accommodate the concerns and reservations we have expressed. We stress the limited contours of our holding. We do not suggest that a transfer of custody automatically creates an obligation on the noncustodial parent to pay child support. Indeed, there may be cases in which child support payments to the noncustodial parent should be continued. Ohlhoff v. Ohlhoff, 246 N.J. Super. at 8, 586 A.2d 839. However, a change of custody may warrant abrogation of the supporting parent's child support obligation. Depending upon the dependent parent's income from sources other than alimony received from the supporting spouse, the noncustodial parent may be required to bear his or her share of the financial child support obligation.
In this case, the Family Part judge refused to consider ordering plaintiff to pay child support solely because she was receiving alimony. We are convinced the judge erred.[1]
Accordingly, the order of the Family Part is reversed and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Defendant also contends that the judge erred by refusing to reduce alimony in accordance with the terms of the property settlement agreement. We find no merit in this contention. R. 2:11-3(e)(1)(E). The child was not emancipated and, thus, the agreement was inapplicable. Newburgh v. Arrigo, 88 N.J. 529, 543-44, 443 A.2d 1031 (1982); Weitzman v. Weitzman, 228 N.J. Super. at 356-57, 549 A.2d 888; Wanner v. Litvak, 179 N.J. Super. 607, 612, 433 A.2d 445 (App.Div. 1981); Alford v. Somerset Cty. Welfare Bd., 158 N.J. Super. 302, 310, 385 A.2d 1275 (App.Div. 1978); Sakovits v. Sakovits, 178 N.J. Super. at 627-28, 429 A.2d 1091; Schumm v. Schumm, 122 N.J. Super. 146, 150, 299 A.2d 423 (Ch.Div. 1973); Hoover v. Voigtman, 103 N.J. Super. 535, 539-40, 248 A.2d 136 (Cty.Ct. 1968).