43 A.3d 1274 (2012)
426 N.J. Super. 276
Joanne MUSICO, Plaintiff,
v.
Scott MUSICO, Defendant.
No. FM-15-532-07N
Superior Court of New Jersey, Chancery Division, Ocean County, Family Part.
Decided February 9, 2012.
May 11, 2012.
*1275 Charles Novins, Toms River, for plaintiff.
G. John Germann, Jr., for defendant (Denoia & Tambasco, LLC, attorneys).
L.R. JONES, J.S.C.
This case presents the following issue regarding a post-judgment motion to reduce child support: What happens when *1276 parties originally consent to an above-guideline level of child support in their divorce settlement agreement, but then there is a subsequent change of circumstances warranting a child support review? Is a new child support figure calculated by strictly applying New Jersey's child support guidelines without regard to the prior agreement, or does the agreement and above-guideline status quo still have relevance in the analysis?
The court holds that when parties have previously and knowingly entered into an above-guideline child support agreement, and when there is a subsequent change of circumstances warranting a child support review, the guidelines must initially be applied. However, the support analysis does not artificially end with the guidelines alone. Rather, the prior agreement and present status quo may serve as additional equitable factors for the court to consider in determining a new child support figure, which may remain above the guidelines as equity requires.

FACTUAL BACKGROUND
Plaintiff and defendant divorced in 2007 after thirteen years of marriage. They had two children, who then were ten and seven years old. At the time of divorce, plaintiff earned approximately $40,000 per year, while defendant earned approximately $70,000 per year.
The parties amicably resolved their 2007 litigation by entering into a comprehensive written settlement agreement which addressed custody, alimony, child support, and other matrimonial issues. They agreed that plaintiff would serve as the children's primary residential custodian with defendant exercising parenting time of approximately one overnight per week or fifty-two overnights per year. With respect to alimony, plaintiff agreed to permanently waive any claim for spousal support against defendant, notwithstanding the lengthy marriage and substantial income disparity between the parties. As regarding child support, however, defendant expressly agreed to pay plaintiff an amount significantly greater than the child support guidelines. Specifically, the settlement called for defendant to pay the guideline sum of $161 per week, plus the cost of plaintiffs health insurance which was expressly deemed to be additional child support, in excess of the guidelines.[1]
The parties' written agreement did not state one way or the other whether there was, or was not, an express trade-off between plaintiffs agreement to waive alimony and defendant's agreement to pay child support at an above-guideline level. However, the settlement document provided no other explanation or information as to why plaintiff agreed to completely forego alimony while defendant simultaneously agreed to pay a heightened level of child support in the same transaction.
Following the 2007 divorce proceedings, plaintiff and defendant moved on with their separate lives. Over the next three years and by further informal arrangement, the parties agreed to significantly expand defendant's parenting time with the children from one overnight per week to approximately three overnights per week, or 156 overnights per year. Once this new schedule was in effect for many months, defendant filed his present application to reduce his child support obligation.
*1277 Defendant asserted that his increased parenting schedule constituted a substantial change of circumstances requiring a support review and reduction. Defendant further argued that the court was now compelled to do the following:
(a) recalculate his child support obligation under the guidelines;
(b) limit his new, modified obligation to a guideline level;
(c) extinguish his commitment to pay above-guideline support.
Defendant further denied that there was ever any connection between his prior agreement to pay above-guideline child support and plaintiffs agreement to permanently waive alimony.
Plaintiff adamantly opposed defendant's application as unfair and inequitable, contending that she had waived her alimony claim in consideration for defendant's agreement to pay above-guideline child support. Plaintiff further countered that defendant's alleged change of circumstances consisted only of a modified parenting schedule, and did not involve any decrease in defendant's income to a level where he could no longer afford to pay above-guideline support. In fact, while plaintiffs income flatlined at approximately $40,000 following the 2007 divorce, defendant's income substantially increased from $70,000 to a current level of approximately $88,000 per year.
Accordingly, plaintiff argued that defendant should still be ordered to pay additional, above-guideline child support in an amount at least equal to the anticipated cost of her health insurance. This additional amount totaled approximately $300 per month, or $70 per week in excess of basic guideline-level child support.
A plenary hearing took place, in which each party testified at length and was cross-examined by opposing counsel. During the hearing, the court had the opportunity to gauge the credibility of the parties and to consider the legal issues and comparative equities. The court also reviewed the parties' respective, updated financial budgets, needs, and additional economic information for the purpose of determining a new child support figure.
Under a strict, guideline-only computation, defendant's modified child support obligation calculates to only $144 per week. However, if the court holds defendant to his prior commitment to pay additional child support in an amount equal to the cost of plaintiffs health insurance, then defendant's weekly child support obligation increases by $70, from $144 per week to an above-guideline figure of $214 per week. Thus, in determining defendant's new, modified weekly child support obligation, the court essentially has three options:
1) Set support at the guideline level of $144 per week, or;
2) Set support at the above-guideline level of $214 per week, or;
3) Set support somewhere between $144-$214 per week.
For the reasons set forth herein, the court expressly rejects defendant's argument that his child support obligation should be capped at the guideline level of $144 per week. Rather, the court finds that the second of the three options is most equitable under the facts of this case, and directs that defendant's modified child support obligation will be the above-guideline sum of $214 per week.

LEGAL ANALYSIS
It is well established that a significant change of circumstances may result in a review and potential modification of a child support order. See Lepis v. Lepis, 83 N.J. 139, 145, 416 A.2d 45 (1980); Monmouth Cnty. v. G.D.M., 308 N.J.Super. 83, 92-93, 705 A.2d 408 (Ch.Div.1997). In this case, the significant increase in *1278 defendant's parenting schedule is in fact a substantial change of circumstances warranting a child support review. The question here is whether to simply apply the guidelines or to do more. The court concludes that it must do more.
First, the court finds plaintiffs contention that there was in fact a direct interrelationship between her alimony waiver and defendant's commitment to pay above-guideline support to be credible. The alimony claim was colorable and potentially substantial, and the court does not find defendant's denial of a connection to be believable. While this issue might certainly have been easier and faster to resolve had the parties expressly spelled out the alimony/child support relationship in their written agreement, the absence of such writing does not prohibit a court of equity from reaching reasonable inferences and conclusions in interpreting the settlement document. This is especially true given the fact that a full plenary hearing was conducted where each party had the opportunity to testify and present evidence supporting his/her respective position.
A court may consider what is written in an agreement in the context of the circumstances at the time of drafting, applying a rational meaning and keeping with the express general purpose. A basic rule of contract interpretation is to evaluate the common intention of the parties. Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957). Where the parties' intention is ambiguous, the most fair and reasonable construction imposing the least hardship upon either of the parties should be adopted. Ibid.
Defendant offered the court little alternative explanation as to why plaintiff waived alimony while defendant simultaneously consented to pay above-guideline child support, if there was not in fact a quid pro quo. In this respect, it is not at all uncommon for divorcing parties to compromise, trade, and set off various monetary claims in the context of reaching a mutually acceptable settlement. Financial issues in a matrimonial case are often, by their very nature, interrelated. Lehr v. Afflitto, 382 N.J.Super. 376, 396, 889 A.2d 462 (App.Div.2006), and frequently involve an economic mosaic of various interfacing economic and equitable components. See Koelble v. Koelble, 261 N.J.Super. 190, 192, 618 A.2d 377 (App.Div.1992). See also Harrington v. Harrington, 281 N.J.Super. 39, 656 A.2d 456 (App.Div. 1995) (recognizing a unitary scheme between financial provisions such as alimony, child support and equitable distribution). Accordingly, courts may look beyond the surface labels of provisions in matrimonial agreements, and study the substance to gain insight into the true nature of the parties' settlement. See Connor v. Connor, 254 N.J.Super. 591, 604 A.2d 158 (App.Div.1992) (trial court had to determine what portion of alimony in the parties' settlement agreement was actually equitable distribution in substance).
There are many financial reasons why parties to a divorce agreement might consensually decide to lower alimony while increasing child support, or vice-versa. For example, alimony is generally taxable while child support is not. Alimony ends upon re-marriage of the recipient, while child support does not. Child support ends upon emancipation of children, while alimony does not. Child support has guidelines, while alimony does not. Economic considerations may differ from case to case, depending on the parties' particular circumstances and respective agendas.
The court notes that in this case, the parties' consensual measuring stick for additional above-guideline child support was the cost of health insurance for the plaintiff as opposed to the children. During the marriage, defendant supplied such insurance *1279 through his business, but does not do so presently. Yet he remains responsible for the cost. Defendant's obligation to essentially pay for plaintiffs health insurance is arguably more akin to alimony than child support. This point buttresses the conclusion of a relationship between plaintiffs alimony waiver and defendant's above-guideline child support obligation.
The court further finds that as a result of the alimony/child support interrelationship, defendant was able to secure a significant economic benefit via plaintiffs permanent waiver of any other alimony claims against him. Not only did defendant free himself of any possibility of paying additional spousal support to plaintiff in the future, but he spared himself the time and money which might otherwise have been involved in litigating any disputed prejudgment or post-judgment alimony claims to conclusion. Instead, he now has an unequivocal immunity from any present or future alimony claims, while to this day he continues to reap the benefits of the alimony waiver as his income rises. This reality must be kept it mind when considering the fairness of defendant's present request to now eliminate his obligation to pay above-guideline child support so soon after divorce.
The child support guidelines are found in Appendix IX-A of the New Jersey Court Rules. Pursuant to note 2 therein, the guidelines must be used as a rebuttable presumption to establish and modify all child support orders. See Ribner v. Ribner, 290 N.J.Super. 66, 73, 674 A.2d 1021 (App.Div.1996); Chobot v. Chobot, 224 N.J.Super. 648, 649, 541 A.2d 251 (App. Div.1988). See also Lozner v. Lozner, 388 N.J.Super. 471, 480, 909 A.2d 728 (App. Div.2006). A rebuttable presumption means that an award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist which make a guideline-based award inappropriate in a specific case. Child Support Guidelines, Pressler & Vernerio, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at p. 2495, note 2 (2012).
Rule 5:6A states that the child support guidelines "shall be applied when an application to establish or modify child support is considered by the court." By common definition, "modification" of support includes not only motions to increase support, but motions to decrease support as well.
It is logical and symmetrical to apply the guidelines in a hypothetical case where the initial child support obligation was itself set at a guideline amount, and where the obligor thereafter suffered a substantial decrease in income and ability to pay. However, the issue becomes more cloudy and complex in other hypothetical scenarios. For example:
1) What if the original child support figure was not limited to the guidelines, but was an above-guideline amount knowingly and consensually entered by the parties at the time of divorce, thereby creating an above-guideline status quo and baseline?
2) What if the custodial parent had made significant financial concessions to the non-custodial parent in order to secure above-guideline child support, and the noncustodial parent continues to economically benefit from those concessions while simultaneously seeking to reduce his child support obligation?
3) What if the change of circumstances triggering a child support review does not involve an alleged substantial decrease in the obligor's income, and the obligor can still reasonably afford to pay some level of above-guideline support?
4) What if relatively little time has passed since the entry of the prior order?
*1280 5) What if there is still a need for above-guideline support?
Such "what if questions are important in this case, where these hypothetical facts actually exist. Further, the circumstances of this litigation give rise to additional interpretive questions of law: Should the guidelines strictly apply here, and was this type of case even contemplated by the drafters in directing that the guidelines apply in modification proceedings?
These questions are not easily answerable, as there is little legal precedent to assist in the inquiry. While there are opinions such as Lozner, supra, 388 N.J.Super. at 480, 909 A.2d 728, which address issues of how to calculate an obligor's net income in the context of a support reduction motion (i.e., whether the cost of a mandatory student loan is deducted from gross income for guideline purposes), such cases are not specifically on point on the issue of guideline applicability in an above-guideline arrangement.
Reported decisions involving the guidelines in support modification proceedings tend to address proposed increases in child support, from a below-guideline level up to a guideline amount. See Ordukaya v. Brown, 357 N.J.Super. 231, 814 A.2d 1138 (App.Div.2003); Winterberg v. Lupo, 300 N.J.Super. 125, 692 A.2d 92 (App.Div. 1997); Chobot, supra, 224 N.J.Super. at 649, 541 A.2d 251. In Chobot, supra, 224 N.J.Super. at 654, 541 A.2d 251, the Appellate Division held that the guidelines apply to motions to increase child support. The court found that the parties' prior settlement agreement contained a provision for the plaintiff-father to pay a level of child support which was below the guidelines. Thereafter, the defendant-mother filed a post-judgment application seeking to increase child support to a guideline level. The court rejected the plaintiff-father's position that the parties' prior agreement essentially immunized him from having to pay increased, guideline-level support. To the contrary, the court held that "(plaintiff has no vested contract right which might defeat his obligation to meet the needs of his children." Id. at 654, 541 A.2d 251.
It is important to note, however, that the Chobot court further stated the following:
We emphasize that a finding that child support as agreed upon was inadequate when compared with the guidelines is distinguishable from a finding that agreed upon child support exceeds the guidelines. We do not suggest that the same principles apply.
[Id. at 650, n. 1, 541 A.2d 251.]
The main difference between an order to increase child support and an order to decrease child support is that the former adds funds into a child's primary home while the latter takes funds away. This is a very important distinction, since the public policy behind every child support determination is protecting the best interests of the children. See Lozner, supra, 388 N.J.Super. at 484, 909 A.2d 728. With specific reference to the guidelines, objective calculation of child support is designated to eradicate inconsistent awards reached by subjective evaluations which often fail to meet the basic needs of the children, Chobot, supra, 224 N.J.Super. at 657, 541 A.2d 251, and to help address the "persistent financial instability of single parent families". Id. at 656, 541 A.2d 251. In protecting the children's best interests, a court must attempt to balance the needs of parents and yet ensure that children remain adequately supported in accordance with their parents' financial wherewithal. Lozner, supra, 388 N.J.Super. at 484, 909 A.2d 728.
Clearly, a non-custodial parent should not be compelled to pay a level of child support beyond his/her financial means *1281 and reasonable ability to pay. Monmouth Cnty., supra, 308 N.J.Super. at 89, 705 A.2d 408. A "best interests of the child" analysis should never require a non-custodial parent to fall into financial ruin through an excessively high and impoverishing child support obligation. However, it is erroneous to presume that every above-guideline support award is automatically inequitable and beyond an obligor's reasonable ability to pay. This is especially true in a case such as the present one, where the obligor agreed to above-guideline child support and further received a substantial financial benefit (i.e., alimony waiver) in the same agreement, and where he has incurred no reduction in income or earning capacity at the present time.
While it is speculative whether the drafters of the guidelines contemplated the exact type of factual scenario presently before the court, they absolutely considered the possibility that strict adherence to the guidelines might not yield fair and equitable results in every single case. For this reason, the drafters expressly included provisions for modifying guideline awards in the guidelines itself. Appendix IX, Note 2 of the guidelines states that the guidelines may be adjusted or disregarded if the court finds good cause or that an injustice would otherwise result. Child Support Guidelines, Pressler & Vernerio, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at p. 2495 (2012). The discretion to deviate in the name of fairness is further supported by Rule 5:6A, which states:
The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. Good cause shall consist of a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that an injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.
Appendix IX, Note 3 of the guidelines states that if a court finds the guidelines to be inappropriate in a specific case, it may either disregard the guidelines or adjust the guideline-based award to accommodate the needs of the children or the parents' circumstances. Child Support Guidelines, Pressler & Vernerio, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at p. 2495, note 3 (2012). In such instance, the court shall then consider various factors set forth in N.J.S.A. 2A:34-23 or N.J.S.A. 9:17-53, which include:
1. Needs of the child;
2. Standard of living and economic circumstances of each parent;
3. All sources of income and assets of each parent;
4. Earning ability of each parent, including educational background, training employment skills, work experience, custodial responsibility for children including the cost of providing child care the length of time and cost of each parent to obtain training or experience for appropriate employment;
5. Need and capacity of the child for education, including higher education;
6. Age and health of the child and each parent;
7. Income, assets and earning ability of the child;
8. Responsibility of the parents for the court-ordered support of others;
9. Reasonable debts and liabilities of child and parent; and

*1282 10. Any other factors the court may deem relevant.
While all of these factors are relevant, it is the final listed factor, "any other factors the court may deem equitable and just," which is particularly material in this case. The court finds that the parties' existing agreement and above-guideline baseline are extremely significant "other" factors to consider here.
Certainly, there might be situations when a non-custodial parent originally agrees to pay above-guideline child support, but at some point thereafter can no longer reasonably afford such payments due to a substantial and legitimate decrease in ability to pay. In such cases, it may be wholly equitable for a court to substantially decrease the payor's child support obligation down to a guideline level, regardless of any prior financial concessions originally made by the custodial parent. However, such is not the situation in this case. Defendant is not suffering from a reduction in income since the divorce. To the contrary, he has realized a substantial increase in income while plaintiffs annual earnings have stagnated.
The court finds that with his substantially increased income, defendant can still reasonably afford to pay the additional $70 per week in above-guideline support. While defendant may also have more childrelated expenses due to his increased parenting time, these expenses have already been credited to defendant in the child support guideline analysis and cannot be doubled-counted. When the court calculated defendant's guideline-only child support figure of $144 per week, it did so by incorporating his new parenting schedule of 156 overnights per year into a "shared parenting" guideline worksheet. This in part explains why defendant's base child support figure under the guidelines has decreased from $161 per week to $144 per week, even though defendant's income had risen substantially from $70,000 to $88,000 per year during the same time period. To a significant degree, the support-increasing effect of defendant's rise in income has neutralized the support-decreasing effect of defendant's greater parenting time schedule, resulting in a de minimus adjustment in guideline support from $161 per week to $144 per week. In short, defendant has in fact already received full and appropriate financial credit for the extra time he now spends with the children.
Another equitable factor which the court has considered is the fact that the parties' prior agreement involved a knowing and consensual decision by the parties to exceed the guidelines. The parties' settlement agreement contained express reference to the guidelines and the calculation of guideline-based support at $161 per week, the accuracy of which neither party has disputed. The parties then expressly added in defendant's additional child support obligation (i.e., the cost of plaintiffs health insurance) on top of the guideline sum, to create an aggregate above-guideline obligation.
This case is thus readily distinguishable from the all-too-common occurrence where a written settlement agreement contains a support figure which happens to be above guidelines, but which does not set forth what child support would have been under the guidelines or even reference the guidelines at all. In such cases, it is difficult for a reviewing court to determine informed consent and whether the parties exceeded guidelines intentionally or accidentally by picking a child support figure out of thin air. Appendix IX-A, note 3 of the guidelines directs that the amount of guideline-based support before any adjustment be specified in writing. Child Support Guidelines, Pressler & Vernerio, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at p. 2495 (2012). Without informed *1283 consent, an above-guideline agreement is clearly susceptible to challenge and possible modification as a matter of equity.
Additionally, when there is an agreement to deviate from the guidelines, the reasons for such deviation are generally to be specified in writing so as "to clarify the basis for the support figure if appealed or modified in the future." Child Support Guidelines, Pressler & Vernerio, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at p. 2495, note 3 (2012). In this case, the parties' settlement agreement did in fact set forth the deviation, but did not expressly set forth in writing the reasons for same. However, this procedural deficit does not automatically render the parties' entire prior, above-guideline child support agreement void and unenforceable. The ultimate responsibility of the court is to accomplish justice and equity, and to adjudicate cases on the substantive merits when possible. As a plenary hearing has already been conducted determining the reasons for the deviation from guidelines, there is no equitable basis to void defendant's prior commitment to pay above-guideline support. This is especially true since defendant has reciprocally received a permanent, enforceable alimony waiver to his benefit under the same exact document, in exchange for the above-guideline arrangement.
If the court were now to procedurally void defendant's commitment and obligation while still enforcing plaintiffs alimony waiver, such action would inequitably elevate form over substance and visit an unduly harsh and oppressive consequence upon plaintiff. As stated in Rule 1:1-2, the Rules shall be construed to secure a just determination, and any Rule may be relaxed by the court if adherence would result in an injustice.[2]
The court has further considered the other multiple factors listed in N.J.S.A. 2A:34-23. These factors include but are not limited to the children's needs, which in this case can be better met with the influx of additional support monies into their primary custodian's home. The extra support money helps plaintiff pay her health insurance, which in turn frees up more money for other items in the children's household budget. The court notes that the parties have submitted case information statements with nearly identical aggregate schedules of budgetary needs. Plaintiffs household budget is approximately $5998 per month, while defendant's household budget is approximately $5967 per month. However, plaintiffs budget does not include an allocation for the cost of health insurance, a vital expenditure which defendant is supposed to provide for her under the divorce agreement. Further, plaintiff earns substantially less money than defendant, and therefore will likely have more difficulty than defendant meeting her household expenses.
These factors are particularly relevant since plaintiff provides the children with their primary residence. If defendant's support is reduced so that plaintiff is now required to fund her own health insurance, this extra cost is likely to put a further economic strain on an already challenging budget in the children's primary household.
Still further, if plaintiff cannot afford health insurance and goes uninsured, then *1284 the parties' children are left in a high-risk and potentially dangerous financial situation. There may be insufficient funds for their primary caretaker to pay uncovered medical bills in the event of illness or injury, meaning that the children's household budget can be negatively impacted even further.
The court has also considered that defendant's income and earning ability has significantly increased, while plaintiffs income has essentially stayed the same since the divorce. The standard of living for each party can be appropriately labeled as middle class, although defendant is in a far better position to maintain that standard than is plaintiff based upon his earnings. Child care is not presently a major issue here, and the children are too young for higher education. The parties are each entering early middle age. Healthwise, plaintiff allegedly has certain arthritis-related issues, while defendant does not have any notable substantiated medical conditions. Neither parent has a court-ordered responsibility for other persons besides the children, and the children themselves do not have any significant income or identified assets and debts of their own.
Finally, the court has considered the substance of defendant's legal argument. When boiled down to its bare bones, defendant's position is essentially that when there is an express agreement and obligation to pay above-guideline child support, that obligation automatically evaporates and decreases to a guideline-only level once there is a change of circumstances. The main problem with defendant's contention is that there are many changes of circumstances which do not in any way equitably require a decrease in child support at all. For example, what if in this case the change in circumstances was a substantial decrease in defendant's parenting time? What if the change in circumstances was a substantial decrease in plaintiffs income, from $40,000 to $15,000 per year? Clearly, neither of these events would justify reducing defendant's child support obligation. Yet, that is exactly what would happen if the court automatically replaced defendant's above-guideline obligation with a guideline-only obligation due to these changes in circumstances.
When there is an existing above-guideline agreement followed by an application to reduce child support, a court must not simply apply a rote formula which can lead to inequitable results and damage the financial stability in the children's primary home. Rather, the court must strive for fairness to both parties by carefully considering all of the facts and comparative equities in each particular case. While there may be some cases where equity requires a child support reduction from an above-guideline level down to guideline level, not all cases require such a result.
Ultimately, the amount of reduction of above-guideline support, if any, is for the court to determine on a case-by-case basis. Family court is a court of equity. Courts may give full range to equitable doctrines in dealing with matrimonial controversies. See Kazin v. Kazin, 81 N.J. 85, 94, 405 A.2d 360 (1979). Equity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied. Am. Assoc. of Univ. Profs, v. Bloomfield Coll., 129 N.J.Super. 249, 274, 322 A.2d 846 (Ch. Div.1974), aff'd 136 N.J.Super. 442, 346 A.2d 615 (App.Div. 1975). Depending on the circumstances, an equitable adjustment of the rights of the parties may vary from one case to another. Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 108, 415 A.2d 1156 (1980). Our law is not to be applied in the abstract, but must be considered in light of the facts in an individual case. Hanover Ins. Co. v. Franke, 75 N.J.Super. 68, 74, *1285 182 A.2d 164 (App.Div.), certif. denied, 38 N.J. 308, 184 A.2d 421 (1962).
Support provisions in a matrimonial settlement agreement are subject to amendment by the court when changed circumstances make enforcement inequitable. Brawer v. Brawer, 329 N.J.Super. 273, 284, 747 A.2d 790 (App.Div.), certif. denied, 165 N.J. 138, 754 A.2d 1214 (2000) (citing Lepis v. Lepis, 83 N.J. 139, 148-49, 416 A.2d 45 (1980)). However, the court finds in this case that on the issue of above-guideline child support, the scale of comparative equities weighs heavily on plaintiffs side. There is little fairness and justice in stripping plaintiff of the benefit of her bargain for above-guideline child support when defendant's income has increased and he can still afford to pay an above-guideline amount for a necessary expenditure which strengthens the financial stability of the children's primary household. Further, defendant's continued payment of above-guideline support into the children's home permits the children to share in the benefits of their father's post-divorce financial success. See Patetta v. Patetta, 358 N.J.Super. 90, 95, 817 A.2d 327 (App.Div.2003); Hudson v. Hudson, 315 N.J.Super. 577, 583, 719 A.2d 211 (App.Div.1998). See also Loro v. Colliano, 354 N.J.Super. 212, 219-23, 806 A.2d 799 (App.Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002); Isaacson v. Isaacson, 348 N.J.Super. 560, 569, 579-83, 792 A.2d 525 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002); Koelble, supra, 261 N.J.Super. at 192-94, 618 A.2d 377.
In reaching this decision, the court is not in any way ruling that defendant is permanently locked into an obligation to pay above-guideline child support until his children are emancipated. To the contrary, if there are future, substantial changes of circumstances which equitably justify another support review, defendant can bring another application at that time. If appropriate, the court may modify child support to a guideline level or otherwise.
At this time, however, defendant's child support obligation remains above guidelines, and is set at $144 per week, plus an additional above-guideline amount of $70 per week for a total of $214 per week. This sum shall be paid as follows: $144 per week through probation with the additional $70 per week to be paid on a monthly basis by deposit of $300 per month into a dedicated account in plaintiffs name, for the purpose of funding plaintiffs health insurance. The extra, above-guideline money is earmarked for health insurance, and if plaintiff does not apply same towards such cost as confirmed in an annual accounting, then plaintiff will refund defendant any unused funds. Defendant's above-guideline obligation is specifically to cover the cost of health insurance and not for any other independent reason. If this cost terminates, so will the defendant's requirement to pay above-guideline support at that time.
NOTES
[1] There was also an additional provision for defendant to contribute to the cost of plaintiff's car insurance, specifically premised on plaintiffs primary driving responsibilities for the children. This provision was ultimately rendered moot by the revised parenting schedule and terminated by the court due to the parties' sharing of transportation duties. Each party now pays his/her own car insurance.
[2] Litigants are well advised, however, to follow the Rules rather than depending on a court of equity to relax them. While divorcing spouses are always free to negotiate above-guideline child support agreements, the possibility of post-judgment litigation hangs perpetually overhead like a black cloud. It is therefore important that parties to such an agreement attempt to spell out in writingin as much detail as possiblethe precise reasons for any deviation from the guidelines.