290 N.J. Super. 66 (1996)
674 A.2d 1021
JOANNE RIBNER, PLAINTIFF-RESPONDENT,
v.
CHESTER DAVID RIBNER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1996.
Decided May 2, 1996.
*68 Before Judges MICHELS and BAIME.
Bettina E. Munson argued the cause for appellant (Schottland, Aaron & Manning, attorneys; James G. Aaron, of counsel; Ms. Munson, on the brief).
*69 Joanne Tammaro, formerly Joanne Ribner, appellant, argued the cause, pro se.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Chester David Ribner appeals from portions of a post-judgment order of the Chancery Division, Family Part, that (1) denied his motion to amend child support obligations based on changed circumstances; (2) ordered him to reimburse plaintiff Joanne Ribner, now Joanne Tammaro, $349 for a life insurance premium; (3) fixed arrearages in support payments at $14,568.01, together with lawful interest, to be paid at the rate of $100 per week; and (4) declared that Corey Ribner (Corey), a son born of his marriage to plaintiff, was emancipated under Florida law.
Defendant seeks a reversal of the order and a remand for further proceedings to determine (1) child support obligations pursuant to New Jersey law; (2) plaintiff's complete financial status, including discovery of the maintenance she receives from her current spouse; and (3) arrearages pursuant to a May 31, 1990 Order and in accordance with his ability to pay. Defendant contends that (1) the trial court did not have a sufficient basis in fact or law to find Corey emancipated under Florida law; (2) the trial court erred in finding that plaintiff's present spouse's income should not be considered in calculating child support; (3) the trial court erred in fixing arrearages at $14,568.01 and in ordering payment at the rate of $100 per week given the fact that his income was limited to approximately $563 per week; and (4) the trial court erred in finding that he should reimburse plaintiff $349 for life insurance premiums when he, in fact, made payments of those premiums.

I.
Defendant first contends that the trial court had an insufficient basis in fact or law to find Corey emancipated under Florida law. He argues that jurisdiction of this matter remained in New Jersey *70 and that the child support issue should have been decided under New Jersey law. More precisely, defendant contends that New Jersey law should apply to the issue of Corey's emancipation. Despite these arguments, it is clear on this record, that during the October 28, 1994 hearing, defendant's counsel failed to object, and even implicitly accepted that the issue of Corey's emancipation would be decided under Florida law.
"It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available `unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Skripek v. Bergamo, 200 N.J. Super. 620, 629, 491 A.2d 1336 (App.Div.) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973)), certif. denied, 102 N.J. 303, 508 A.2d 189 (1988); see also Chalef v. Ryerson, 277 N.J. Super. 22, 28-29, 648 A.2d 1139 (App.Div. 1994); State v. Bogus, 223 N.J. Super. 409, 419, 538 A.2d 1278 (App.Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988).
Here, the issue does not concern the trial court's jurisdiction, but whether the trial court made the proper choice of law decision. Therefore, since no objection was raised below regarding the trial court's decision to apply Florida law, we decline to review the issue of whether the trial court correctly chose to apply Florida law in determining Corey's emancipation.
Alternatively, defendant argues that the trial court did not have a sufficient factual basis to determine that Corey, because of his mental or physical incapacity, was emancipated. Application of Florida law to the determination of whether Corey was emancipated, requires reference to Section 743.07 of the Florida statutes, which addresses the rights, privileges and obligations of persons 18 years of age or older. The statute, in pertinent part, provides:
(1) The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older, and they shall enjoy and suffer the rights, privileges, and obligations of all persons 21 years of age or older except as otherwise excluded by *71 the State Constitution immediately preceding the effective date of this section and except as otherwise provided in the Beverage Law.
(2) This section shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years when such dependency is because of a mental or physical incapacity which began prior to such person reaching majority or if the person is dependent in fact, is between the ages of 18 and 19, and is still in high school, performing in good faith with a reasonable expectation of graduation before the age of 19. [FLA. STAT. ANN. § 743.07 (West 1991) (emphasis added).]
Based upon this provision, Florida Law "does not independently impose on parents the duty of supporting their healthy, non-dependent children who have reached the age of majority." Zolonz v. Zolonz, 659 So.2d 451, 452 (Fla. Dist. Ct. App. 1995). However, as in New Jersey, the determination of whether a child is emancipated is necessarily a factual one. In situations in which there is no evidence that a child "labors under any mental or physical incapacities[,]" a request for child support will be denied. McCauley v. McCauley, 599 So.2d 1002, 1004 (Fla. Dist. Ct. App. 1992); Stultz v. Stultz, 504 So.2d 5, 6 (Fla. Dist. Ct. App. 1986); see also Madson v. Madson, 636 So.2d 759, 760-61 (Fla. Dist. Ct. App. 1994).
It was established that Corey, who, according to defendant suffers from Obsessive Compulsive Disorder and requires special education and a lot of attention, was attending Broward Community College in Fort Lauderdale, Florida on a full time basis and taking a "full course load of twelve credit hours[.]" Corey was living at home and commuting to school five days a week. According to plaintiff, in addition to attending college full time, Corey was "working a 35 hour week at Radio Shack. He takes seven buses in the course of the day, back and forth. He gets home at about 8:30, nine o'clock at night. He is succeeding in his studies and he does volunteer work at the school."
Significantly, the trial court commented on more than one occasion that it did not feel comfortable with the amount of information it had on this issue. At a September 16, 1994 hearing, the trial court noted that it "need[ed] to know a whole lot more about where [Corey] is, what he is doing, the nature of the *72 courses, whether there are considerations given to him because of his peculiar learning need or needs." The trial court felt it necessary to conduct a subsequent hearing, which was held on October 28, 1994. At that hearing, the trial court commented:
[My] sense is that under Florida law, the concept of whether you fall within that unique exception that allows for the status of the child to remain unemancipated beyond the age of 18 does not require a finding that the child be wholly disadvantaged or handicapped.
But, here is what I'm fearful of. I'm fearful that the record is not enough before me to justify a view and frankly, the only way I think I'm going to ever be able to cross the bridge is with some type of affidavit or certification from the doctor who is currently having him in therapy. Because, otherwise, how can I possibly make a finding?
Despite these fears, and apparently without the benefit of any additional information, the trial court declared Corey emancipated under Florida law.
In our view, the trial court erred in deciding the critical issue of Corey's emancipation under Florida law without the benefit of more information. The trial court did not have the information it sought in the form of either testimony or an affidavit from a doctor who was currently treating Corey or any other competent medical professional familiar with Corey's condition and status. Moreover, the trial court did not have the benefit of any other medical evaluation of Corey, which would allow it to make a truly informed decision. Consequently, we are constrained to reverse the declaration that Corey was emancipated under Florida law and remand the matter to the trial court for further consideration of that issue. We leave to the trial court's discretion whether a plenary hearing is necessary or whether this issue can be resolved on affidavits, including affidavits or certifications from physicians or other medical professionals who have treated or examined Corey.

II.
We next consider defendant's claim that the trial court erred in refusing to consider plaintiff's present spouse's income in calculating *73 the amount of child support payments for each of the children born of their marriage. In this regard, defendant argues that pursuant to the Child Support Guidelines, plaintiff's income should include "any maintenance payments and/or income derived from her current husband, Robert Tammaro."
In calculating the income of the respective parties, the trial court determined that defendant's income for 1993 was $29,250, which the trial court further calculated to represent a "weekly, after tax net" of $563. The trial court determined that plaintiffs weekly disposable income for 1994 was $437. Thereafter, pursuant to the Child Support Guidelines, the trial court compared the two incomes in percentage form and determined defendant's percentage to be 56.44%.
Even if we were to assume that the income figures used by the trial court were, in fact, comparable to one another, the trial court, in considering plaintiff's income, appeared to disregard a significant segment of Rule 5:6A, a rule which governs the application of the Child Support Guidelines. These guidelines "are to be applied with respect to the initial determination of child support and to motions for modification." Koelble v. Koelble, 261 N.J. Super. 190, 194, 618 A.2d 377 (App.Div. 1992); see also Zazzo v. Zazzo, 245 N.J. Super. 124, 129, 584 A.2d 281 (App.Div. 1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991). Rule 5:6A states:
The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. Good cause shall consist of a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court. [emphasis added.]
The trial court's application of these guidelines is thus mandatory unless "good cause" is demonstrated as to why such application is inappropriate. See Koelble v. Koelble, supra, 261 N.J. Super. at 194, 618 A.2d 377. The determination of the existence of "good cause" is "within the sound discretion of the *74 court." Pursuant to this rule, if "good cause", as defined in Rule 5:6A, is shown to exist, than these guidelines may be modified or disregarded completely. See Chobot v. Chobot, 224 N.J. Super. 648, 658, 541 A.2d 251 (App.Div. 1988). The first prong of the "good cause" test set forth in Rule 5:6A instructs the court to focus upon the considerations set forth in Appendix IX-A of the New Jersey Court Rules, or the presence of other relevant factors which may make the Child Support Guidelines inapplicable. Ibid. One consideration contained in Appendix IX-A states that "[i]n determining gross income, [a factor which] may make these guidelines inapplicable" is the existence of "income derived by other household members[.]" [Pressler, Current N.J. Court Rules, Appendix IX-A.]
Here, the trial court did not even consider the "good cause" issue, despite information that plaintiff's standard of living may have changed due to the income of her new spouse who was employed as an accountant. In light of the existence here of income derived from another household member, the trial court, had it considered the "good cause" test, may well have determined that "good cause" existed to modify or disregard the guidelines and instead utilize the factors set forth in N.J.S.A. 2A:34-23a, which are "to be used in those cases not governed by court rule[.]" N.J.S.A. 2A:34-23a. Significantly, N.J.S.A. 2A:34-23a explicitly states that in determining the amount to be paid by a parent for child support, the trial court should consider, among other things, the "[s]tandard of living and economic circumstances of each parent[.]" N.J.S.A. 2A:34-23a(2).
However, even assuming that the trial court correctly concluded that the Child Support Guidelines were not to be modified or disregarded, it afforded such guidelines too narrow an interpretation. Appendix IX-E of the New Jersey Court Rules provides guidance as to the use of the Child Support Guidelines. In pertinent part, this appendix states:

*75 B. Income.
(1) For the purposes of these guidelines, "gross income" is defined as all earned and unearned income from whatever source derived, including, (but not limited to) the following items: (1) Compensation for services, including wages, fees, commissions, and similar items, (2) Gross income derived from the operation of a business minus ordinary and necessary operating expenses, (3) Gains derived from dealings in property, (4) Interests, (5) Rents, (6) Royalties, (7) Dividends, (8) Alimony and separate maintenance payments from other relationships, (9) Annuities, (10) Income from life insurance and endowment contracts, (11) Income from discharge of indebtedness, (12) Pensions, (13) Income in respect of a decedent, (14) Income from an interest in an estate or trust and (15) disability grants or payments.
[Pressler, Current N.J. Court Rules, Appendix IX-E (emphasis added).]
Because the definition of "gross income" contained in the Child Support Guidelines is not limited to the sources of income specifically enumerated, a court may consider a party's spouse's income in determining child support. Of course, we do not suggest that plaintiff's spouse had a duty to support her children from a prior marriage. However, we do hold that funds given by the spouse to plaintiff constituted income which was not exempt from consideration in determining plaintiff's support obligation to her children. Consequently, the trial court erred in failing to consider plaintiff's spouse's income in its determination of whether the current level of support should be modified.

III.
Finally, we are satisfied that the trial court erred in fixing arrearages at $14,568.01 and ordering payment of $100 per week. The record here does not establish how the trial court arrived at the amount of arrearages due or the basis for the weekly payments.
In New Jersey, "on an application to determine the amount of arrearages and to compel their payment, the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay arrearages." Mastropole v. Mastropole, 181 N.J. Super. 130, 141, 436 A.2d 955 (App.Div. 1981); see also Weitzman v. Weitzman, 228 N.J. Super. 346, 358, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989); *76 Brennan v. Brennan, 187 N.J. Super. 351, 357, 454 A.2d 901 (App.Div. 1982); Winter v. Winter, 162 N.J. Super. 456, 461, 393 A.2d 593 (App.Div. 1978). However, this discretion does not relieve the court of the responsibility of providing reasons for its conclusions.
In Mastropole, supra, 181 N.J. Super. at 140, 436 A.2d 955, the defendant contended on appeal that the trial judge erred in failing to determine the amount of arrearages in alimony and child support due from plaintiff. Defendant alleged that the trial court "should not have left the resolution of the issue of arrearages to agreement of counsel or a summary hearing at some future date." Ibid. In considering defendant's arguments, we held that "the trial judge should have determined the amounts of arrearages in alimony and support due to defendant." Ibid. We also held that "[i]f there were disputed factual issues as to the amount of the arrearages, plaintiff's ability to pay the accumulated arrearages, or the amount of credits to which plaintiff was entitled, the trial judge should have conducted a plenary hearing and resolved the matter." Ibid. We emphasized that:
We must not lose sight of the fact that the enforcement, collection, modification and extinguishment of unpaid arrearages in alimony and child support payments are matters addressed to the sound discretion of the court. Each case demands careful examination and weighing of all of the essential facts.

[Mastropole, supra, 181 N.J. Super. at 141, 436 A.2d 955 (citing Tancredi v. Tancredi, 101 N.J. Super. 259, 261, 244 A.2d 139 (App.Div. 1968); Liss v. Liss, 19 N.J. Super. 358, 361, 88 A.2d 526 (App.Div. 1952); Federbush v. Federbush, 5 N.J. Super. 107, 110, 68 A.2d 473 (App.Div. 1949)) (emphasis added).]
See also Kreuzer v. Kreuzer, 230 N.J. Super. 182, 188, 553 A.2d 55 (App.Div.), certif. denied, 117 N.J. 118, 564 A.2d 848 (1989); Dunne v. Dunne, 209 N.J. Super. 559, 571, 508 A.2d 273 (App.Div. 1986); Brennan v. Brennan, supra, 187 N.J. Super. at 357, 454 A.2d 901. The trial court here did not appear to undertake such a careful weighing of all of the essential facts.
Further, it is well established that a trial court needs to state the reasons for its conclusions. Rule 1:7-4, in pertinent part, states that "[i]n civil actions tried without a jury and on every *77 motion decided by written orders that are appealable as of right, the court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon." The "[f]ailure to perform that duty `constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980) (quoting Kenwood Assocs. v. Bd. of Adjustment, 141 N.J. Super. 1, 4, 357 A.2d 55 (App.Div. 1976)); see also Shadow Lake Village Condominium Ass'n, Inc. v. Zampella, 238 N.J. Super. 132, 138, 569 A.2d 288 (App.Div. 1990); Wertlake v. Wertlake, 137 N.J. Super. 476, 485-86, 349 A.2d 552 (App.Div. 1975).
The trial court must clearly state its factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts may be informed of the rationale underlying the conclusion. Monte v. Monte, 212 N.J. Super. 557, 564, 515 A.2d 1233 (App.Div. 1986); see also State v. Singletary, 165 N.J. Super. 421, 424-25, 398 A.2d 576 (App.Div.), certif. denied, 81 N.J. 50, 404 A.2d 1150 (1979). Without the benefit of such findings, it is impossible for an appellate court to perform its function of deciding whether the determination below is supported by substantial credible proof on the whole record. Monte, supra, 212 N.J. Super. at 565, 515 A.2d 1233. As we stated in Monte, supra, "[t]rial judges should always state their reasons so that counsel and an appellate tribunal may be fully informed." Ibid.
Consequently, the judgment affixing arrearages and establishing an order of payment must be reversed and the matter remanded to the trial court for redetermination on the record, supplemented by such additional proofs as the trial court and the parties may deem necessary and appropriate. Upon remand, the trial court should make findings and conclusions as required by Rule 1:7-4.

IV.
We are also satisfied that the trial court should reconsider defendant's claim that he paid the $349 premium for the life *78 insurance on April 6, 1994 and make appropriate findings and conclusions as to that issue.
Accordingly, the challenged provisions of the order under review are reversed and the matter remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.