**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0746-13T4

VALERIE GIARUSSO,

    Plaintiff-Appellant,

v.

WILLIAM G. GIARUSSO, SR.,

    Defendant-Respondent.

_____

Submitted May 2, 2018 — Decided July 13, 2018

Before Judges Alvarez, Currier, and Geiger.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Bergen County,
Docket No. FM-02-1561-08.

Snyder & Sarno, LLC, attorneys for appellant
(Joseph V. Maceri and Ruth Kim, of counsel and
on the brief).

William G. Giarusso, Sr., respondent pro se.

PER CURIAM

    Plaintiff Valerie Giarusso appeals from three post-judgment orders: (1) a June 27, 2013 order; (2) a September 16, 2013 order amending the June 27, 2013 order; and (3) a September 18, 2013

order denying reconsideration of the June 27, 2013 order. We affirm in part and vacate and remand in part.

## I.

We glean the following facts from the record. Plaintiff and defendant William G. Giarusso, Sr., were married on October 30, 1993, and have two children, born in 1996 and 1999. During the marriage, defendant was the sole wage earner and plaintiff was a homemaker. Plaintiff filed for divorce in February 2007, later withdrew her complaint, and subsequently filed a second divorce action on January 15, 2008. Defendant filed an answer and counterclaim on March 19, 2008. A contentious divorce proceeding ensued with a judgment of divorce being entered on June 24, 2010, after a twenty-seven-day trial.

The parties possessed joint marital property, including substantial investments; life insurance; their former marital residence (FMR) in Upper Saddle River, New Jersey; a vacant parcel in Margaretville, New York; and seven properties in Florida (the Florida properties). Homes were under construction on five of the Florida properties. Defendant completed three one-family homes in 2011, spending $153,720.52 in 2010 and $480,257.76 in 2011 to complete the construction. Defendant maintains plaintiff was aware of the expenditures, and he made the capital improvements with plaintiff's knowledge and tacit approval.

On June 24, 2010, the trial court issued a lengthy opinion and Final Judgment of Divorce (FJOD). The opinion and FJOD provide, in relevant part: (1) the FMR and the Margaretville property shall be sold within sixty days unless the parties mutually agreed otherwise; (2) the Florida properties shall be listed for sale unless the parties agreed to first complete construction or secure all necessary approvals and then list them for sale; (3) the Northwestern Mutual Life Insurance Policy (Northwestern Policy) shall be surrendered and the proceeds used to pay marital debt with any excess to be equally divided; (4) the parties shall equally share the costs to maintain the mortgages and property taxes on the FMR, the Margaretville property, and Florida properties; (5) defendant shall advance the mortgages and real estate taxes for these properties and then deduct these costs from the supplemental alimony paid to plaintiff; (6) defendant shall pay alimony in the amount of thirty percent of defendant's base salary of $500,000 or $150,000 annually and twenty percent of his commission checks, yielding a total alimony obligation of $547,500 per year; (7) defendant shall pay child support in the amount of $75,000 per year per child plus ten percent of defendant's commission checks until he paid a total of $150,000; (8) each party shall be responsible for their own car payments; (9) the personal property shall be distributed in accordance with

A-0746-13T4

the agreement reached by the parties; (10) each party shall be responsible for their own attorney's fees; and (11) plaintiff shall be responsible for forty percent of the $21,909.54 owed to Leslie Solomon, CPA, and $82,146.80 owed to Barry Kaufman, Esq., the court-appointed discovery master. The parties did not appeal the FJOD.

Thereafter, the parties engaged in several rounds of post-judgment motion practice. In November 2011, plaintiff moved to enforce litigant's rights, seeking fourteen forms of relief. Defendant cross-moved to compel plaintiff to reimburse him for certain costs and other relief. On February 14, 2012, the trial court issued two orders and a written decision, which provided, in pertinent part: (1) defendant was permitted to take certain credits for the properties; (2) the Florida properties were to be sold within sixty days after June 24, 2012, unless the parties agreed otherwise; (3) plaintiff's share of maintenance of the properties was limited to a maximum of $137,500, with any excess amount carried forward; (4) defendant shall continue to be responsible for the lease payments on plaintiff's vehicle; and (5) the Northwestern Policy was to be surrendered, with the parties sharing the cash surrender value consistent with the FJOD.

Contrary to the court's ruling, the Florida properties were not sold. Neither party provided the trial court with the terms of any agreement reached regarding those properties.

Plaintiff filed a second motion to enforce litigant's rights in March 2012. Defendant filed a cross-motion for reconsideration of the February 14, 2012 order. Following oral argument, the trial court entered two May 25, 2012 orders, which denied certain relief and set the matter for a plenary hearing to determine whether expenditures and capital improvements were completed on the Florida properties with plaintiff's knowledge and approval.

The court also ruled: (1) defendant shall receive a credit of $35,000 of the $70,000 he advanced for plaintiff's legal fees, since the monies advanced were derived from joint marital assets; (2) defendant shall receive a credit for all car lease payments from the inception of the lease to its termination date; and (3) plaintiff shall provide defendant with reasonable proof as to monies received from the surrender of the Northwestern Policy.

The trial judge noted the properties in Florida were under construction and, as a result, the judge suggested it may be prudent for the parties to consider investing in completing the homes under construction prior to listing for any sale. The court also stated the parties would share equally in any gains or losses in the event of a sale of the Florida properties.

The parties entered into an August 17, 2012 consent order before the plenary hearing commenced. The consent order provided for, in relevant part: the parties sharing joint legal custody with defendant designated as parent of primary residence (PPR); permitting plaintiff to apply to revise the parenting schedule and to be designated PPR if she returns to New Jersey after relocating to California; a reduction in child support; restraining plaintiff from entering or being on the premises of the FMR after she relocates to California; allowing plaintiff to remove specified items from the FMR; and the release of specified funds to each party.

The consent order also listed the issues to be decided in the plenary hearing: (1) whether defendant is entitled to a reduction in alimony and the amount of defendant's alimony arrears; (2) the amount of defendant's child support arrears through the date of the plenary hearing; (3) the amount of the credits to defendant for payments made on the FMR, the Florida properties, the Margaretville property, plaintiff's leased Land Rover and automobile insurance, the surrender value of the Northwestern Policy, reimbursement for the children's custodial accounts, the amount of the credit for counsel fees previously paid on behalf of the plaintiff for which defendant is not responsible, and the manner in which each party is to be paid; (4) all issues relating

to the jewelry; (5) whether the parties agreed to invest in the Florida property after the FJOD was entered; (6) the amount of child support owed by either party as of August 15, 2012; and (8) counsel fees.

The nine-day plenary hearing took place over a nine-month period. Following written submissions and oral argument, the court issued a sixteen-page written decision and several orders on June 27, 2013. In a subsequent September 16, 2013 order, the court amended the June 27, 2013 orders and clarified its earlier decision.

In his analysis of the issues regarding the real estate, the judge emphasized plaintiff introduced no testimony with respect to the fair market value of the Florida properties. The trial judge noted "[d]efendant testified . . . that the three residences in Florida could not be sold without a certificate of occupancy ('C/O')." This testimony was uncontroverted by plaintiff. The judge found "[d]efendant decided to complete the construction of the homes in order to secure a C/O so that the homes could be listed for sale or rented."

With respect to the possible sale of the real estate, the court stated:

> The [p]laintiff never filed a motion to compel the sale of the FMR, Margaretville or the Florida [P]roperty. The parties entered

into a [c]onsent [o]rder dated August 17, 2012, in which the [p]laintiff did not seek the sale of any of the properties.

The [c]ourt notes that it is uncontroverted that the sale of any of the properties at the present time is likely to be a "short-sale." Neither party has the financial ability to deal with the tax consequences of a short sale.

Even if there was not an agreement not to list the properties for sale, [p]laintiff has failed to introduce any evidence that they could have been sold, with or without a C/O. The [p]laintiff could have contacted [r]ealtors in Florida to produce evidence contrary to the [d]efendant's testimony. The [p]laintiff did not. Likewise, the [p]laintiff has failed to produce any appraisals that would establish either the FMR or Margaretville could be sold without a shortfall. The [p]laintiff has failed to produce any plan as to how her share of any shortfall would be paid.

Relevant to this appeal, the amended order stated:

1. The provision of the Final Dual Judgment of Divorce limiting the defendant's right to collect any monies due him from the plaintiff from the supplemental alimony awarded to the plaintiff as defined in the [c]ourt's decision dated the same date, is vacated.

2. The [c]ourt finds that the plaintiff entered into the agreement with the defendant to maintain all of the real properties including their home in Upper Saddle River, Margaretville and Florida and to share in all the profits and losses equally; and that the plaintiff agreed to be responsible for one-half of the capital improvements to the Florida property.

. . . .

6. The defendant shall remain in the [FMR] with the children, as the parties agreed that the [FMR] will not be listed for sale at the present time, as any such sale is likely to result in a "short sale."

7. The defendant shall pay utilities, lawn care, snow removal and the first $500 of any noncapital repairs on the [FMR].

8. All other costs with respect to the [FMR], including but not limited to the first mortgage, [home equity line of credit account], real estate taxes, capital repairs, and noncapital repairs, in excess of $500 shall be paid equally by the plaintiff and defendant.

9. Since the parties agree, the Margaretville vacant land shall remain listed for sale.

10. The parties shall equally be responsible for all costs with respect to the Margaretville vacant land until it is sold.

11. When the Margaretville vacant land is sold, the entire net proceeds shall be paid to the defendant, provided that the plaintiff credited one half of the net proceeds as against the monies owed to the defendant as set forth in this order and the [FJOD].

12. Since the plaintiff and defendant agreed not to sell the Florida property but rather invest in completing the homes under construction after the [divorce] decision was entered and also agreed to secure the subdivision approvals, the defendant shall continue to manage the Florida property, provided that the defendant shall however consult with the plaintiff and advise her as

to any further capital improvements he may seek to undertake.

13. No further capital improvements shall be undertaken on the Florida properties without the consent of the plaintiff, which consent shall not be unreasonably withheld, unless the defendant is prepared to advance all monies required, then no such consent shall be required.

. . . .

17. The plaintiff is directed to pay the defendant $621,284.70, without considering the payments that the defendant made for the plaintiff and children for which he is entitled to additional reimbursement . . . .

18. The plaintiff shall pay defendant for the plaintiff's children's expenses advanced by the defendant as set forth on schedule L except for those items which the [c]ourt has crossed out which amount owed to the defendant totals $124,425.19.

19. The total which the plaintiff owes to the defendant, pursuant to paragraphs 17 and 18 of this Order, is $745,709.89 ($621,284.70 plus $124,425.19).

20. $250,000 shall be deducted from the plaintiff's one-half share of the defendant's 401(k) plan that is subject to equitable distribution, provided that the plaintiff shall receive credit of $200,000 from the $745,709.89 owed to the defendant, reducing the amount owed by the plaintiff to the defendant to $545,709.89.

21. Defendant shall continue to pay the plaintiff 30% of his current base income of $500,000 or $150,000 per year of $6,250 semi-monthly as alimony.

A-0746-13T4

. . . .

26.  Should the former marital residence, the Margaretville residence or vacant land, or any of the Florida properties be sold in the future, the plaintiff's share of the proceeds shall be paid to the defendant until she has paid in full the $545,709.89 as set forth in paragraph 20 above, reimbursement of the children's custodial accounts as set forth in paragraph 16 above, any child support arrearages owed from July 1, 2013, or her share of the expenses for the former marital residence, Margaretville residence or vacant land, Florida properties, or life insurance premiums from July 1, 2013.

27.  Any alimony due to plaintiff from her 20% share of the defendant's commissions shall not be paid to her, but credited against her obligations to the defendant until all of her obligations, as set forth herein and the Final Dual Judgment of Divorce, are paid in full.

. . . .

30.  The parties are to negotiate with or take action against the merchant with respect to the propriety sale of jewelry by the plaintiff.  Any recovery shall be divided equally by the parties after first paying the defendant the $10,000 that the plaintiff received.

The trial court also awarded defendant the following credits: (1) $70,000 for counsel fees paid on plaintiff's behalf in the divorce and domestic violence actions from defendant's earnings after the divorce complaint was filed; (2) $44,813.25 for the surrender of the Northwestern Policy; and (3) $42,422.54

11

representing plaintiff's forty percent share of Kaufman's and Solomon's fees.

Plaintiff sought reconsideration, which was denied on September 18, 2013. In its written decision, the trial court stated:

> The [p]laintiff does not specifically set forth where the [c]ourt erred. The Plaintiff's brief is directed at only the issue as to whether the [p]laintiff agreed with the [d]efendant to complete construction of the Florida Properties and to withhold the decision to sell the [FMR] and the [Margaretville property]. The [c]ourt decision as to all other issues is not raised in the [p]laintiff's motion for reconsideration.
>
> As set forth in the [d]ecision, the amount of the capital improvements to complete construction of the Florida Properties is $359,035.08.
>
> The [p]laintiff argues that she never agreed to complete construction of the Florida Properties. The [p]laintiff never explained why she did not, therefore, request the sale of the Florida properties in her motions filed December 16, 2011 and March 30, 2012. The [p]laintiff did not address any issue as to the sale or completion of the Florida Properties in the [c]onsent [o]rder dated August 17, 2012.
>
> The [p]laintiff testified that she never read the Judgment of Divorce and accompanying decision which provided for the FMR and Margaretville to be sold by a date certain unless the parties agreed otherwise. The parties were aware that it appeared that both the FMR and Margaretville were encumbered by

liens which exceeded their apparent fair market value ("FMV"). Whether the construction of the Florida Properties was to be completed was raised by the [c]ourt to the [p]laintiff.

The [p]laintiff testified that she wanted to sell the FMR. The [p]laintiff secured a listing agreement for the FMR. The [p]laintiff secured a listing for vacant land associated with Margaretville but not for the residence. The [p]laintiff made no effort to secure a listing for the Florida Properties.

The [p]laintiff concedes in their post hearing brief that the liens filed as against the Florida Properties exceed their FMV.

The [p]laintiff never moved to enforce a sale of any of the properties pursuant to the JOD.

The [d]efendant completed construction of the Florida Properties in order to secure certificates of occupancy so that if the general market improved the homes could be sold. The real estate market continued in a depressed state. As a result, the completed homes were leased in order to limit the cost of supporting the continuing mortgage costs and real estate taxes.

The [c]ourt does not find the argument that it is not equitable for the [p]laintiff to be responsible for 50% of the capital costs and maintenance given the disparity in their income to be persuasive.

The [p]laintiff seeks to retain 50% of any profit generated by the sale of the various properties. The [d]efendant offered to assume responsibility to the various properties subject to a diminished interest on the part of the [p]laintiff. The [p]laintiff declined [d]efendant's offer.

13

On appeal, plaintiff argues:

I. THE RECORD BELOW DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS THAT THERE WAS A MUTUAL AGREEMENT THAT THE FLORIDA PROPERTIES WERE TO BE RETAINED BY THE PARTIES AND THAT CONSTRUCTION BE COMPLETED SOLELY BY DEFENDANT AS A JOINT ENDEAVOR.

A. The Trial Court Erred in Finding That There Was An Agreement Between the Parties As to the Florida Properties.

B. Alternatively, If There Was an Agreement Between the Parties to Retain the Florida Properties and For Defendant to be Solely Responsible for the Management and Maintenance Thereof and For Plaintiff to Share the Expenses Equally, The Agreement Should be Set Aside.

II. THE TRIAL COURT FAILED TO CONSIDER THE VOLUNTARY NATURE OF THE PAYMENTS MADE BY DEFENDANT ON BEHALF OF THE PLAINTIFF AND CHILDREN AND THEREFORE, DEFENDANT SHOULD NOT BE ENTITLED TO VARIOUS CREDITS.

III. THE DEFENDANT WAS AWARDED VARIOUS CREDITS TO WHICH HE WAS NOT ENTITLED PURSUANT TO THE COURT ORDERS.

IV. THE TRIAL COURT FAILED TO PROPERLY ADDRESS THE ISSUE OF THE DISPOSITION OF JEWELRY AND INACCURATELY PROVIDED DEFENDANT WITH FULL CREDIT FOR MONIES PREVIOUSLY RECEIVED BY PLAINTIFF AFTER THE SALE OF JEWELRY.

II.

14

Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Therefore, an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (alteration in original) (quoting Rova Farms, 65 N.J. at 484).

"The findings of the Family Part are entitled to particular deference in view of its 'special expertise in the field of domestic relations.'" Pressler & Verniero, Current N.J. Court Rules, cmt. 6.2 on R. 2:10-2 (2018) (quoting Cesare, 154 N.J. at 412-13). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

A-0746-13T4

III.

In Point I, plaintiff contends the record does not support the trial court's findings that the parties reached a mutual agreement to retain the Florida properties and for defendant to construct the residential units as a joint endeavor. Primarily, plaintiff asserts the purported agreement lacks a meeting of the minds and is not supported by valid consideration. Alternatively, plaintiff suggests, if there was an agreement, it should be set aside as the product of overreaching by defendant who took advantage of his then confidential relationship with plaintiff. Additionally, plaintiff argues the agreement must be set aside because the terms of the agreement were manifestly unfair or oppressive and dictated by defendant, the dominant party.

We are unpersuaded by these arguments and affirm the trial court's ruling on the issues pertaining to the Florida properties substantially for the reasons expressed by the trial judge in his written opinion and September 16, 2013 order. We add the following comments.

As to credibility, the judge stated he had "the opportunity to access the credibility of the parties, who both testified." Based on his findings, we surmise the judge tacitly found defendant's testimony to be more credible than plaintiff's. While the judge could have made more explicit credibility findings, the

16

court essentially accepted defendant's version. "Thus, by that finding, the trial court essentially credited [defendant's] version and not [plaintiff's]." See N.J. Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 345 (2010). The record also demonstrates plaintiff's testimony was argumentative, sometimes evasive, and riddled with internal contradictions and inconsistencies.

The factual findings rendered by the trial judge regarding the issues involving the Florida properties are amply supported by substantial, credible evidence in the record. As indicated by the judge, much of defendant's testimony was uncontroverted. Many facts were not disputed by plaintiff. The judge's conclusions logically flow from those findings. Applying the appropriate deference, we discern no basis to disturb the trial court's findings and conclusions as to issues pertaining to the Florida properties.

## IV.

Plaintiff further argues the trial court: (1) failed to consider the voluntary nature of the payments made by defendant on behalf of plaintiff and the children (Point II), (2) erred by awarding defendant various credits to which he was not entitled (Point III), and (3) failed to properly address the disposition of the jewelry and erred by awarding defendant full credit for

monies previously received by plaintiff after the sale of the jewelry (Point IV). Plaintiff further contends the trial court did not provide the requisite findings or analysis leading to its conclusions.

A trial court must state the reasons for its conclusions. Ribner v. Ribner, 290 N.J. Super. 66, 76 (App. Div. 1996); R. 1:7-4). As we explained in Ribner:

> The trial court must clearly state its factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts may be informed of the rationale underlying the conclusion. Without the benefit of such findings, it is impossible for an appellate court to perform its function of deciding whether the determination below is supported by substantial credible proof on the whole record.
>
> [Id. at 77 (citations omitted).]

Accord Ricci v. Ricci, 448 N.J. Super. 546, 574-75 (App. Div. 2017); Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997).

Here, the trial court did not make sufficient findings of fact and conclusions of law in his award to defendant of credits for expenses he paid, the entire cash surrender value of the Northwestern life insurance policy, and jewelry sales proceeds. The trial court did not express its reasoning for allowing credit for some expenses paid by defendant and not others. As a result, we are unable to perform our review function as to the credits awarded.

18

Similarly, we are unable to determine the basis for awarding defendant the entire $44,813.25 cash surrender value of the Northwestern life insurance policy. The FJOD required the policy to be surrendered, with the proceeds used to pay marital debts and any unused excess to be equally divided. A subsequent February 14, 2012 order directed the policy to be surrendered and the proceeds equally shared. The trial court did not adequately explain the basis for determining defendant was entitled to the full cash surrender value.

Finally, the trial court determined defendant was entitled to a credit for the entire $10,000 proceeds from the sale of the jewelry, except for any recovery from a separate action against the merchant jeweler, which would be divided equally. Plaintiff argues defendant never sought equitable distribution of the jewelry. Claiming she believed the jewelry was hers, plaintiff sold the jewelry to a third party for $10,000. The trial court did not provide a sufficient analysis for its ruling.

We are constrained to vacate and remand the portions of the orders pertaining to the proper credits to be awarded to defendant for the expenses he paid, the Northwestern Policy proceeds, and the

jewelry sale proceeds.[1]  The remand court shall reconsider these issues and make findings of fact and conclusions of law.

Affirmed in part and vacated and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1]  We recognize the judge who presided over the trial, post-judgment motions, and plenary hearing is now retired.

A-0746-13T4