**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3344-16T2

CHEVRA LOMDEI TORAH and
ELIYAOU LEVINE,

    Plaintiffs-Appellants,

v.

LIBA ARYEH and MOSHE ARYEH,

    Defendants-Respondents,

and

ELIZABETH INDERRIEDEN and
YEHOSHUA FRANKEL,

    Defendants.

_____

        Argued telephonically April 12, 2018 —
        Decided July 23, 2018

        Before Judges Nugent and Geiger.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Ocean County, Docket No.
        C-000234-10.

        Lawrence H. Shapiro argued the cause for
        appellants (Ansell Grimm & Aaron, PC,
        attorneys; Lawrence H. Shapiro and Nicole
        Miller, on the brief).

Sterling Rauf argued the cause for respondents.

PER CURIAM

This appeal arises out of two rounds of binding arbitration by two different Rabbinical courts of a dispute over the right of first refusal to purchase adjoining property under Jewish law.[1] Plaintiffs appeal from an April 5, 2017 order, which confirmed a March 3, 2017 Chancery Division order: (1) terminating a May 13, 2013 arbitration agreement to submit the dispute to a second Rabbinical court; and (2) granting defendant's motion to enforce the trial court's September 16, 2016 order, which enforced the ruling of the second Rabbinical court, compelling plaintiffs to comply with its earlier rulings or else have its earlier rulings, which entitled plaintiffs to buy the disputed property, reversed and vacated. Because we find the trial court erred by denying defendants' motion to vacate the first arbitration award and plaintiffs' application to confirm that award without making adequate factual findings and conclusions of law, we vacate the two inconsistent June 15, 2012 orders and remand.

---

[1] Absent an enforceable option to purchase, the common law and statutes of this State do not recognize a right of first refusal to purchase adjoining property.

We glean the following facts from the record. Plaintiffs Chevra Lomdei Torah and Eliyaou Levine own property in Lakewood, New Jersey. Defendants Liba Aryeh and Moshe Aryeh own adjoining property (the Property), which they attempted to sell to third parties. Under Judaic law, an adjoining property owner has a right of first refusal to purchase neighboring property. Plaintiffs sought to enforce the right to purchase the Property from defendants.[2] In December 2010, plaintiffs filed suit against defendants in the Chancery Division.[3]

In April 2011, the parties entered into a consent order to submit their dispute to a Rabbinical court in accordance with Judaic law. In August 2011, the parties entered into a second consent order that provided the decision rendered by the Badatz of Kollel Averichum and Yeshiva (the First Rabbinical Court) shall be docketed in the Superior Court of New Jersey as an arbitration award enforceable in the courts of this State.

On September 6, 2011, the First Rabbinical Court ruled in favor of plaintiffs, confirming their right to purchase the Property. On September 27, 2011, the First Rabbinical Court

---

[2] Elizabeth Inderrieden, Edward B. Inderrieden, and Yehoshua Frankel were also named as defendants. The claims against them were subsequently dismissed by plaintiffs and they are not participating in the appeal.

[3] The record does not contain the complaint or defendants' answer.

further ruled defendants were to deed the Property to plaintiffs upon payment of $310,000. This amount was later revised to $285,000, payable to defendants, with the remaining $25,000 to be placed in escrow with the First Rabbinical Court.

Defendant moved to vacate the First Rabbinical Court's ruling, claiming the First Rabbinical court suffered from conflicts and engaged in inappropriate activities.[4] Based on a letter under the five-day rule, plaintiffs sought to enter the First Rabbinical Court's ruling as a judgment. While defendant's motion was pending, the trial court sua sponte requested Rabbi Yisroel Belsky, "as a friend of the court," to "review the facts of the case and provide the [c]ourt with [his] opinion as to whether the [First Rabbinical Court's] decision was correct under Halakhah, Jewish law," due to the "very sensitive religious issues" with which the court was "not completely familiar."

In a June 7, 2012 letter to the court, which neither party received, Rabbi Belsky concluded the First Rabbinical Court's ruling "had no grounds upon which to stand, and was not viable under Halakhah,"and opined "it would be a serious miscarriage of justice for any [c]ourt to enforce the decision." Rabbi Belsky

---

[4] The record does not include the motion papers filed by defendant. Consequently, the record does not indicate the circumstances surrounding the alleged conflicts of interest or inappropriate activities.

offered "to further enumerate [his] reasoning," but there is no indication he provided any additional reasoning.

Plaintiffs argued Rabbi Belsky had no authority to provide such an opinion. The trial court disagreed, indicating it had given authority to Rabbi Belsky to do so. The trial court also stated Rabbi Belsky "was the one who would normally oversee" the First Rabbinical Court, without explaining in what capacity or under what authority.

On June 15, 2012, the trial court denied defendant's motion to vacate the First Rabbinical Court's ruling and refused to enter the ruling as a judgment. The trial court expressed three reasons for not enforcing the ruling. First, it found plaintiffs' application procedurally deficient and untimely. Second, plaintiffs did not formally move to enter the ruling as a judgment. Third, the trial court accepted Rabbi Belsky's opinion that a conflict of interest existed, stating:

> [I]n addition, . . . based on what I've seen so far before the file, I'm more inclined to believe that Rabbi Belsky was supposed to review this by the parties. But it doesn't matter whether they agreed to or not. . . . I believe, based on what I heard, that I would never let an arbitrator sit like that as a lead arbitrator under any set of circumstances. I would remove a lawyer from an arbitrat[ion] if he was representing the party itself. It's fundamentally unfair to do that.

. . . I have great respect for the [Rabbinical court], . . . [and] I am satisfied the parties did agree to go to the Rabbinical court, but I am not going to enforce this Rabbinical court's ruling. It is highly suspect before me. The letter from Rabbi Belsky is very persuasive before me. I am not going to preside over a miscarriage of justice under any set of circumstances, procedural or otherwise. I will agree the matter can go to a [Rabbinical court] that will be agreed upon by the parties. But if the parties do not agree to a specific [Rabbinical court], then I will seek out names of [Rabbinical courts] that the matter be referred to myself. [B]ut I would prefer that the parties agree to it.

. . . .

Counsel, I am not going to preside over what appears to me to be a miscarriage of justice. There was apparent conflicts, there were allegations made, I am not comfortable with the way this was handled at all. . . .

. . . .

. . . I believe the matter belongs before the Rabbinical court. I think the parties need to select the Rabbinical court before whom it goes.

The trial court stated it would not enforce the First Rabbinical Court's ruling in light of Rabbi Belsky's letter. The trial court did not identify the individual or individuals having a conflict of interest or state the nature of their purported conflicts. Additionally, the trial court did not consider the ruling to be a final decision, noting only one of the three Rabbis approved the ruling. Despite these reasons for not confirming the

award, the trial court declined to vacate the ruling without further explanation.

On February 4, 2013, the trial court entered an order referring the parties to a second Rabbinical court to hear the matter, without consideration of the First Rabbinical Court's rulings. The order directed the parties to enter into an arbitration agreement upon penalty of dismissal or suppression of their pleadings if they failed to do so within thirty days. The court further ordered plaintiffs to deposit $310,000 in escrow with their attorney and defendants to provide a deed conveying the Property to their attorney.

On April 11, 2013, the trial court entered a third consent order providing the parties would submit the matter to Bais Din Bais Yoseph, also known as the Rabbinical Court of Boro Park (the Second Rabbinical Court). On May 13, 2013, the parties entered into an arbitration agreement (the Arbitration Agreement), referring the controversy to the Second Rabbinical Court for a final and binding decision on all disputes and matters in controversy.

In March 2014, the Second Rabbinical Court ruled: (1) plaintiffs were entitled to purchase the Property for $305,000 and requisite fees within thirty-five days; (2) defendants were to

convey title by a "CVG deed;"[5] (3) all other claims were deferred; and (4) any doubt about its ruling or enforcement of the issues would be decided only by the Second Rabbinical Court.

On June 18, 2014, plaintiffs wrote to the trial court describing numerous attempts to obtain a proper deed in accordance with the Arbitration Agreement and Second Rabbinical Court's ruling and seeking enforcement. On July 16, 2014, the trial court entered a fourth consent order specifying details of the closing for the Property, which provided, if closing did not take place by August 14, 2014, either party could seek sanctions through the court. The Second Rabbinical Court issued a ruling on August 14, 2014, regarding financial liabilities for the Property. On September 16, 2016, the trial court stated: "On August 19, 2014, the purchase price was paid to defendants and title to the [P]roperty was transferred to the plaintiffs."

On June 14, 2015, the Second Rabbinical Court issued a ruling in favor of defendants in the amount of $9,724.50 for additional expenses caused by the delay in closing. It also directed the parties to return to the Second Rabbinical Court for a ruling on defendants' claim for additional expenses totaling $54,717.

---

[5] A CVG deed contains a covenant against grantor's acts and is commonly referred to as a bargain and sale deed.

On February 16, 2016, the Second Rabbinical Court issued a Disobedience Letter to plaintiff Levine indicating he was in violation of Jewish law. The Second Rabbinical Court issued another ruling on June 23, 2016, compelling plaintiffs to appear within thirty days and comply with its previous rulings. It warned defendants could apply for enforcement if plaintiffs failed to comply.

Defendants moved to enforce the Second Rabbinical Court's ruling. Plaintiffs opposed the motion and applied for declaratory judgment seeking to terminate the arbitration based upon the July 2014 consent order. On September 16, 2016, the trial court entered two orders. One order granted defendants' motion to enforce and awarded defendant's counsel fees and costs for the motion. The second order set forth various requirements pertaining to the sale of the Property and directed closing take place by August 14, 2016, and, if it did not, either party could apply for sanctions. The trial court determined the Second Rabbinical Court should decide any dispute over closing charges. The trial court also denied plaintiffs' motion for a declaratory judgment.[6]

Plaintiffs moved for reconsideration, which the court heard on December 16, 2016. At the hearing, plaintiffs introduced

---

[6] The record does not contain the order denying declaratory judgment.

evidence that the translation of the 2014 Ruling was incorrect. The translation stated: "All other parties' claims were deferred." Plaintiffs claimed it should have stated all other claims were "denied." The trial court denied reconsideration and awarded defendants counsel fees and costs for the motion. The court noted, "by continuing to return to the arbitrators," plaintiffs' behavior was inconsistent with its new argument regarding the alleged mistranslation.

Defendants filed two subsequent motions for enforcement. The second was granted on March 3, 2017. The trial court stayed the proceedings pending appeal but terminated the Arbitration Agreement. On April 5, 2017, the trial court entered the "Final Order Amending Order of March 3, 2017," which confirmed the March 3, 2017 termination of the Arbitration Agreement. This appeal followed.

On appeal, plaintiffs raise the following points:

POINT I

THE 2012 DENIAL OF JUDGMENT ORDER WAS BEYOND THE SCOPE PERMITTED BY N.J.S.A. 2A:23B-23.

POINT II

THE MARCH 2014 RABBINICAL RULING DID NOT EXTEND THE SECOND RABBINICAL COURT'S JURISDICTION AND/OR AUTHORITY TO ALL CLAIMS AND/OR ISSUES BETWEEN THE PARTIES INDEFINITELY.

POINT III

THE SECOND RABBINICAL COURT ACTED EX-OFFICIO SUBSEQUENT TO THE 2014 CONSENT ORDER.

a.    The Second Arbitration Agreement limited the jurisdiction of the Second Rabbinical Court to the issues listed therein and terminated upon entry of the 2014 Consent Order.

b.    The Second Rabbinical Court exceeded the scope of the authority and jurisdiction granted to it via the 2014 Consent Order, in its [August 14, 2014] Ruling.

c.    The Second Rabbinical Court did not have jurisdiction over the parties or the dispute at the time it issued the June 2015 Rabbinical Ruling and June 2016 Rabbinical Ruling.

POINT IV

THE TRIAL COURT ERRED IN ENTERING THE ENFORCEMENT AND RECONSIDERATION ORDERS.

The governing principles for the enforceability or vacation of arbitration awards are well-settled.  Our public policy "encourages the 'use of arbitration proceedings as an alternative forum.'"  Wein v. Morris, 194 N.J. 364, 375-76 (2008) (quoting Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 489 (1992)).  "In promoting a sense of finality, there is 'a strong preference for judicial confirmation of arbitration awards.'" Linden Bd. of Educ. v. Linden Educ. Ass'n, 202 N.J. 268, 276 (2010) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193

N.J. 1, 10 (2007)). "Accordingly, judicial review of an arbitrator's decision is very limited, and the arbitrator's decision is not to be cast aside lightly." <u>Bd. of Educ. of Borough of Alpha, Warren Cty. v. Alpha Educ. Ass'n</u>, 190 N.J. 34, 42 (2006) (citing <u>Barcon Assocs., Inc. v. Tri-County Asphalt Corp.</u>, 86 N.J. 179, 187 (1981)). "[A]n arbitrator's award will be confirmed so long as the award is reasonably debatable." <u>Policemen's Benevolent Ass'n v. City of Trenton</u>, 205 N.J. 422, 429 (2011) (citations omitted) (quoting <u>Linden</u>, 202 N.J. at 276).

> From the judiciary's perspective, once parties contract for binding arbitration, all that remains is the possible need to: enforce orders or subpoena[s] issued by the arbitrator, which have been ignored, N.J.S.A. 2A:23B-17(g); confirm the arbitration award, N.J.S.A. 2A:23B-22; correct or modify an award, N.J.S.A. 2A:23B-24[;] and in very limited circumstances, vacate an award[,] N.J.S.A. 2A:23B-23.
>
> [<u>Minkowitz v. Israeli</u>, 433 N.J. Super. 111, 134 (App. Div. 2013).]

The Uniform Arbitration Act (the Act), N.J.S.A. 2A:23B-1 to -32, states the court shall vacate an arbitration award if:

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;

(4) an arbitrator exceeded the arbitrator's powers;

(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or

(6) the arbitration was conducted without proper notice . . . .

[N.J.S.A. 2A:23B-23(a).]

The Act further provides:

If the court vacates an award on a ground other than that set forth in paragraph (5) of subsection a. of this section, it may order a rehearing. If the award is vacated on a ground stated in paragraph (1) or (2) of subsection a. of this section, the rehearing shall be before a new arbitrator.

[N.J.S.A. 2A:23B-23(c).]

The Act also states: "If the court denies an application to vacate an award, it shall confirm the award unless an application to modify or correct the award is pending." N.J.S.A. 2A:23B-23(d). Here, there was no pending application to modify or correct the award.

The "party seeking to vacate an arbitration award bears the burden of demonstrating 'fraud, corruption, or similar wrongdoing on the part of the arbitrator[].'" Minkowitz, 433 N.J. Super. at 136 (alteration in original) (quoting Tretina v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994)). "As the decision to vacate an arbitration award is a decision of law, this court reviews the denial of a motion to vacate an arbitration award de novo." Ibid. (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)).

Here, despite concluding it would not "enforce" the First Rabbinical Court's ruling because only one of the three Rabbis signed the award and enforcing it would result in a "miscarriage of justice," the trial court denied defendants' motion to vacate the arbitration award and, contrary to N.J.S.A. 2A:23B-23(d), also denied plaintiffs' informal application to confirm the award. Unfortunately, the trial court did not state its factual findings or analysis leading to its conclusion. In particular, the trial court did not render findings with respect to any conflict of interest, "evident partiality," or "corruption" by a member of the First Rabbinical Court. N.J.S.A. 2A:23B-23(c). Instead, the trial court stated it was relying on Rabbi Belsky's conclusory letter, which was not provided to the parties prior to oral argument.

14                                                      A-3344-16T2

A trial court must state the reasons for its legal conclusions. <u>Ribner v. Ribner</u>, 290 N.J. Super. 66, 76 (App. Div. 1996); <u>R.</u> 1:7-4. As we explained in <u>Ribner</u>:

> The trial court must clearly state its factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts may be informed of the rationale underlying the conclusion. Without the benefit of such findings, it is impossible for an appellate court to perform its function of deciding whether the determination below is supported by substantial credible proof on the whole record.
>
> [290 N.J. Super. at 77 (citations omitted);]

<u>accord</u> <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 574-75 (App. Div. 2017); <u>Filippone v. Lee</u>, 304 N.J. Super. 301, 306 (App. Div. 1997).

Here, the trial court did not make findings of fact and correlate those findings with its conclusions of law as part of its decision to not vacate or confirm the First Rabbinical Court's award. As a result, we are unable to perform our review function to determine whether there were grounds to vacate the award.

Additionally, notwithstanding its decision to not vacate the award, the trial court ordered the parties to enter into an arbitration agreement for a second rabbinical court to hear the matter, over plaintiffs objection, upon penalty of dismissal or suppression of their pleadings if they failed to do so within thirty days.

"Although arbitration is traditionally described as a favored remedy, it is, at its heart, a creature of contract." Fawzy v. Fawzy, 199 N.J. 456, 469 (2009) (quoting Kimm v. Blisset, LLC, 388 N.J. Super. 14, 25 (App. Div. 2006)). The scope of an arbitrator's authority is based on the terms of the contract between the parties. Cty. Coll. of Morris Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383, 391 (1985) (citations omitted). "It is for that reason that binding arbitration cannot be imposed by judicial fiat." Fawzy, 199 N.J. at 469. Absent a vacation of the award pursuant to paragraphs (1) or (2) of N.J.S.A. 2A:23B-23(a), the trial court was without authority to compel the parties to undergo a second round of arbitration under subsection (c).

We recognize plaintiffs entered into an April 11, 2013 consent order and a May 13, 2013 arbitration agreement providing for submission of their disputes to the Second Rabbinical Court. However, plaintiffs were compelled to do so or face dismissal of their complaint with prejudice pursuant to the February 4, 2013 order, despite plaintiffs' protests during the June 15, 2012 motion hearing. Just as "courts should never work to coerce or compel a litigant to make a settlement," absent statutory authority, courts should never coerce or compel a litigant to submit to binding arbitration. All Modes Transport, Inc. v. Hecksteden, 389 N.J. Super. 462, 469 (App. Div. 2006) (quoting Peskin v. Peskin, 271

N.J. Super. 261, 275 (App. Div. 1994)).  In particular, courts should not use undue pressure or the threat of sanctions to force parties into binding arbitration.

Because the trial court declined to vacate the award, it lacked authority under N.J.S.A. 2A:23B-23(c) to compel a second round of arbitration.  Therefore, the April 11, 2013 consent order and the May 13, 2013 arbitration agreement were enforceable only if they were entered into voluntarily, without force or coercion. Plaintiffs can hardly be said to have voluntarily agreed to the second round of arbitration.

We are constrained to vacate the June 15, 2012 orders denying defendant's motion to vacate the award and plaintiff's application to confirm the award; the February 4, 2013 order directing the parties to enter into an arbitration agreement for the second round of arbitration; and each subsequent order.  We remand for the trial court to reconsider the applications to vacate and confirm the first award and make findings and conclusions of law. We leave to the sound discretion of the trial court whether to conduct a plenary hearing on remand.

Vacated and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                          A-3344-16T2